P. A. ROST AND JONATHAN MONTGOMERY *v.* HEIRS OF HENRY DOYAL.

Where the testator had directed his slaves after a certain period to be emancipated and sent to Africa, and some of them were held in indivision with his partner, who refused to give his consent to the emancipation, and became the purchaser from the heirs of their undivided half of the negroes— *Held :* That the provisions of the will in regard to such of the testator's negroes became inoperative.

APPEAL from the District Court of the Parish of Ascension, *Duffel,* J.
P. *Soulé,* for plaintiffs. *Elmore & King* and *Benjamin, Bradford & Finney,* for defendants.

BUCHANAN, J. By the last will and testament of *Stephen Henderson,* made in 1837, and probated in 1838, it was provided (Art 6, note to page 459 of the 5th Annual Reports,) that the slaves upon the various plantations of the testator, and which belonged to himself individually, should be sent to Africa, as free persons, with an outfit of one hundred dollars each, at stated periods, within twenty-five years after his death.

And the 8th Article of the same will (p. 460 of the 5th Annual, in note,) contains the following disposition :

" Some arrangement must be made with *Henry Doyal,* who is one half owner of the Mount Houmas plantation and slaves, by selling the land to him at the end of the first five years ; he in the meantime must liquidate his account at his leisure, paying no more interest upon any balance that may be due to my estate than six per cent. per annum. The negroes upon the Houmas estate to be emancipated upon the same conditions as those upon the other plantations, one-half of them being already my property. *Mr. Doyal* would, no doubt, make an agreement with the executors for those belonging to him."

From the first sentence of this Article, it would appear that the slaves, as well as the plantation belonged to the testator and to *Doyal,* jointly, each for an undivided half ; while from the last sentence it would seem that a portion of those slaves belonged to *Mr. Doyal* solely.

The fact is, as shown by the subsequent proceedings of the parties interested, that the first statement was the correct one. Each and every slave attached to the Mount Houmas plantation belonged jointly to the two partners in the plantation, *Henderson & Doyal.* The testator evidently contemplated that *Doyal* would agree that the slaves thus jointly held, should be sent to Africa. But in this he was mistaken. *Doyal* positively refused to give his consent to anything of the kind ; as appears from the following extract from a notarial act signed by the said *Henry Doyal,* bearing date of the 1st June, 1839, which is in evidence ; and the said *Henry Doyal* has further declared that, whereas the said late *Stephen Henderson* did, by the said last will, direct his testamentary executors to make some arrangements with him, the said *Henry Doyal,* and to pay him a certain sum of money to consent and permit that all the slaves attached to the Mount Houmas plantation may be emancipated and sent to Africa in the manner and at the time provided by the last will of the said late *Stephen Henderson,* and that the said slaves receive each one hundred dollars ; now he, the said *Henry Doyal,* here declares, that he does hereby expressly refuse his assent to the execution of this, or of any part of the will of the said late *Stephen Henderson,* relative to the

34

emancipation of the said slaves attached to the Mount Houmas plantation ; and that as owner of the undivided half of the said slaves, he objects to their emancipation, and formally denies the right of the said late *Stephen Henderson* to emancipate any of the said slaves without his consent."

By the same notarial act, which contains the above recited clause, the heirs at law and residuary legatees of *Stephen Henderson,* who had been sent into possession of his estate by decree of the Court of Probates of New Orleans, dated the 24th May, 1839, sold to *Henry Doyal* the undivided half-interest of their ancestor, *Stephen Henderson,* in the Mount Houmas plantation and in the slaves attached to the same (one hundred and sixty-nine in number), for the price of one hundred and twenty-five thousand dollars, in ten promissory notes, payable at different periods from one to five years from the date of the sale and of the notes, (1st of June, 1839.)

Three of those notes are the subject of the present suit.

The signature of *Doyal* to the notes is admitted ; but the defendants claim an allowance of twenty per cent. upon the appraised value of the slaves attached to the Mount Houmas plantation, and sold with said plantation by the notarial act of the 1st of June, 1839, in deduction of the three notes now sued upon, being one of the notes payable in four years from date, and two of the notes payable in five years from date of the said sale.

This claim or pretension of the defendants is based upon the following clause of the notarial act of sale aforesaid :

" It is further agreed by and between the parties hereto, that the present sale is made and accepted on the condition, that in case the Court of Probates for the parish and City of New Orleans, or any court having competent jurisdiction in the matter, shall decide, *that the undivided half of the slaves attached to the said plantation, and belonging to the estate of the said late Stephen Henderson, are to be sent to Africa* in obedience to the last will of the said late *Stephen Henderson,* and are entitled to receive each one hundred dollars, the said *Henry Doyal* shall, as he does hereby bind himself, comply with such part of the judgment of said court on the subject, and that in such case, a deduction of twenty per cent. on the appraised value of the said slaves, as the same are appraised in the inventory of the said plantation and slaves made by the *Hon. Edward Duffel,* Parish Judge in and for the parish of Ascension, on the 6th day of April, 1838, shall be made from the 1st installment of the purchase price of the said plantation and slaves, or from any other installment of the said purchase price, as the said parties may agree upon."

The condition contained in the above recited clause, did not suspend the payment of the price of the sale, and the defendants have failed to show that the condition has ever happened. The decision of this court in 11th An. 543, relied upon by defendants' counsel, was not *" that the undivided half of the slaves attached to the plantation, and belonging to Stephen Henderson, are to be sent to Africa."* The decision in 11th An. was professedly based upon the decision of our predecessors in 5th An., p. 468, that the 8th section of *Henderson's* will, as to the liberation of the slaves on the Mount Houmas plantation, could only operate, if at all, upon such slaves, as by a partition in kind with *Doyal,* should be set off to *Henderson's* succession in exclusive ownership.

We acted, in 11th Annual, upon this hint of our predecessors, and decreed, in a suit between *Henderson's* heirs and *Henderson's* executors, to which *Doyal* was not a party, that all the slaves of which *Henderson's* estate was sole owner, either

at the time of *Henderson's* death, or by partition in kind with *Doyal*, made since *Henderson's* death, should be sent to Africa, provided they were willing to go.

Now, so far from any slaves having been set off to *Henderson's* succession by a partition in kind with *Doyal*, the evidence shows that the parties interested in those slaves have rendered such a partition *impossible* by the sale which has been made to *Doyal* of all the interest of the succession of *Henderson* in said slaves.

There is a plea of prescription filed by defendants; but it is proved that prescription was interrupted by written acknowledgements of indebtedness made at various times by *Henry Doyal*, with the avowed intention of interrupting prescription.

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

## Same Case—On a Re-hearing.

Buchanan, J. In affirming the judgment of the District Court by our former decision rendered herein, it escaped our notice that the said judgment contained a clause which is inconsistent with the view that we have taken of the controversy between the parties.

The clause referred to reads as follows :

" It is further ordered, that the Houmas ·plantation and slaves be seized and sold according to law, to satisfy the amount due, as aforesaid, on the above recited mortgages, including the costs ; *said sale to be made subject to the clause in the sale from the residuary legatees of the late Stephen Henderson to Henry Doyal, in relation to the emancipation of the undivided half of all the said slaves and their issue.*"

This portion of the judgment italicized by us is in direct conflict with the reasons assigned by this court for its decree, inasmuch as a partition of the slaves, in view of such emancipation of an undivided half, is held by us to have been rendered impossible by the acts of the parties.

It is, therefore, adjudged and decreed, that our former judgment and decree rendered in this cause be set aside and avoided ; and it is now ordered, adjudged and decreed by the court, that the judgment of the District Court from which this appeal is taken, be amended, by rejecting therefrom the clause which directs that the sale of the Houmas plantation and slaves shall be *subject to the clause in the sale from the residuary legatees of the late Stephen Henderson to Henry Doyal, in relation to the emancipation of the undivided half of all the said slaves and their issue ;* that in other respects, the.said judgment be affirmed, with costs of the court below ; those of appeal to be paid by plaintiffs and appellees.

Duffel, J., absent.